Good morning. May it please the Court, Marissa Conroy on behalf of Mr. Balmes-Cruz. And I'd like to reserve one minute for rebuttal. Your Honors, in this case, Mr. Balmes-Cruz entered into a fast-track agreement with the government in which he agreed to waive a significant number of his rights. He agreed to waive his right to have the case presented to a grand jury. He agreed to forego his right to litigate any motions. He agreed to give up all his trial rights and essentially agreed to a limited waiver of his appeal. So the day of Mr. Balmes-Cruz's sentencing hearing was essentially his one day in court, his one opportunity to receive a full and fair hearing. And that did not happen in this case. Instead, what the District Court did was essentially relied on what it characterized as Mr. Balmes' eleven prior deportations and its belief that Mr. Balmes-Cruz had committed essentially the same offense and shouldn't receive a lesser sentence for his second offense. The District Court then relied on those erroneous facts again to deny Mr. Cruz two levels for fast-track and to impose a sentence at the mid-range of the District Court's calculated guidelines. That was error and we're asking this Court to remand based on that. Now it's abundantly clear from looking at the record, and the government concedes this fact, Mr. Balmes-Cruz did not have eleven prior deportations. Didn't his own counsel refer to them as deportations rather than the voluntary removals during the sentencing hearing? She actually used both languages. Initially she referred to them as deportations, and then at one point the District Court inquired if she disputed that he had the prior removals and she agreed, I believe that was at, I can find it, we're in the ER, but he inquired of that and she agreed that those prior removals did exist. I think what she essentially did was she was playing a little loose with the correct language surrounding the circumstances. What is the difference between deportation and removal? Well, there's essentially several differences. So you have the prior language of an official proceeding, a deportation or a removal proceeding. After ERIRA, everything essentially became a removal proceeding. So what's the substantive difference between the two as far as, you know, that kind of comment is concerned? What happened here was he only had one official proceeding. I mean, so what? I mean, what difference does it make what you call it? Because they weren't official proceedings before a court. That's like saying arrests and convictions are the same thing. Oh, no, no, no. If you look at the history of, you know, how these usages of these terms came about, just the historical oddity. At one point, right, it was called deportation and then the law was changed and the same kind of action is called a removal. It's just a change in name. You know, it's like not any different when someone gets married and changes their last name. It's the same thing. If I call, you know, a married woman by her maiden name, I mean, is that prejudicial? I don't think so. Let me clarify what happened here, though. He had one official proceeding in 2008, one time before an immigration judge in which he was ordered deported. Everything else was essentially a catch and release. It was merely an arrest. Is there any indication in the record that this distinction that you're relying on in any way affected the sentence, that the Court somehow misunderstood? As I read the record, he was using deportation colloquially and so did other people. And so that's going back to Judge Tashima's point. I just don't see what difference it made in this particular case. There are cases where the distinctions may matter, but this doesn't seem to be one of them. I think it absolutely is. These are arrests of which we know absolutely nothing about. Did he go to the border, you know, 10 years ago and say, I'd like to apply for a visa? And they said, no, you need to leave. We're turning you around. Did he show up with documents and they said, these aren't the proper documents for admission? There are no facts in the record regarding those 11 prior apprehensions. But when the district judge was looking at the personal characteristics and the history of this particular offender, he was concerned about the fact that this individual had basically been found in the United States illegally 11 times, returned, whether it be by voluntary departure as opposed to deportation, I don't think makes any difference here. The judge seemed to be concerned. The sentencing judge seemed to be concerned. This man had been coming back and forth over the border for at least 11 times. But that's my point, is I think we need to have some evidence in the record that showed the circumstances surrounding that underlying arrest and also some evidence in the record showing he was told he couldn't come back. You can't categorize someone as a recidivist if you don't know the circumstances surrounding the arrest and there was no information ever. Didn't he have a conviction for illegal transportation of aliens? Yes. That would have been a conviction from 10 years ago in which he was a passenger and then he successfully completed his three years of supervised release. Right. And wouldn't that give him some knowledge that you can't come over here without permission? And he did remain out of the country for eight years, which is obviously a significant span of time in relation to those prior arrests. Now, the other thing I'd point out to the Court was the judge initially categorized this as the same offense. He then corrected himself. Although he corrected himself. I'm sorry? He corrected himself. He did. Immediately almost. But I think what's telling is what the judge ultimately said, and he said, I disagree with the four fast point track reduction. I think the defendant is entitled to something in light of the fact that it's been eight years. But I wouldn't give him the full four points with his history of deportations and a prior immigration felony. It incentivizes people to return to the United States when you make the guideline range lower than what they got for the last immigration felony. Now, speaking of that, and this is a point that I don't think was raised, but let me ask you, but it ties into what you just said. Under Rosales-Gonzalez, the Ninth Circuit has said that a sentencing judge may not manipulate the calculations under the guidelines in order to produce a guideline range that will allow it to impose the sentence it prefers. Did that happen here, in your opinion? And if so, was it raised below? And if not, why not? Well, I think he essentially did because he got to his results. Then was that raised in your objections? I did not see that in the appeal brief. Namely, a violation of the Rosales-Gonzalez rule that a sentencing judge cannot manipulate the calculations to reach a particular guideline result. I would say you're correct. I did not raise that. I'm happy to submit a supplemental brief on that. But I think the other issue in relation to that, in terms of what you're saying, is the judge's statement there essentially disregards the guidelines. It disregards the 3553 factors, and it's premised on this simple belief that you have to get a higher sentence for your second immigration offense. It completely disregards everything and throws it out the window. And so the combination of the fact that he had 11 prior apprehensions we know nothing about and the belief that you need to receive a greater sentence the second time around, regardless of the offense and regardless of the 3553 factors, that was error. And that was the crux of the entire sentencing proceeding in which the judge reached his determination. Lastly, I would just say in regards to the substantive unreasonableness of the sentence, when you look at his guideline calculations, initially he would be a base offense level 8, 0 to 6 months. You add in the prior immigration felony, it bumps him up 4 months, 4 to 10 months. When you add in the additional 6 levels for the prior offense, essentially that bumps another 14 levels up. That's one month less than he did on the underlying offense and ultimately got to the guidelines. The judge used those prior arrests and the erroneous belief that he needed the greater sentence for the second time around to then deny the fast track. And what is wrong with saying that I see that the government's made a fast track offered here, but I don't think that's the appropriate sentence because it incentivizes people to return to the U.S. when you make the guidelines range lower than what you got for the last immigration felony, which is what the government's offer does here. So even though a four-point departure is not warranted, I'll go two points, and then he goes on to say, I'm looking at it under the 3553 factors and this is my analysis. Make whatever arguments you want. The district court didn't prevent the defendant from doing that. It considered it and it reached its determination. What's wrong with saying that? Well, it would apply the wrong way to standard first in denying the fast track. It essentially was relying on prior deportations or the prior apprehensions. Deterrence. Deterrence is not a legitimate consideration. But it didn't look at any of the factors under that require eligibility for fast track. It not once in the entire sentencing hearing acknowledged waiver of grand jury, waiver of trial rights, pitting guilty. It never mentioned that once. Doesn't the court have discretion? Doesn't the district court have discretion not to do that? Not if it's the incorrect legal standard. Just like in Figueroa v. McCossie, they applied the wrong legal standard. So despite the fact the district court has discretion, they still have to use the proper standard. What was the wrong standard here? The fact that the district court did not look at any of the criteria for fast track. Instead, it applied the 3553A factors in denying fast track. You're running out of time, but I'll give you a minute. Thank you. Good morning. May it please the Court. Benjamin Hawley for the United States. To answer Judge Simon's question, excuse me, about manipulation of the guidelines, first, that was not raised below, so that would be waived. But also, this is not a situation where the court was manipulating the guidelines. He was trying to give some credit, some recognition for fast track. You have two points rather than four. How can you say he's not trying to manipulate the guidelines when what he says is, I'm not going to accept the four-level reduction under fast track because that would result in a guideline that I think is too low? Because he can, if he wants, accept and say, I accept that guideline reduction, but I'm going to go above the guidelines based upon this defendant's particular characteristics. He could do that. And, in fact, what I was going to point out is in Rosales-Gonzalez that discusses this, it's the same district court judge. And there he had said, I'm denying fast track, I believe it was entirely in that case, because of prior criminal history and, again, not wanting to result in a lower range for a similar type of offense. But I think the judges, you know, post-Booker, we can go above or below guidelines. We just have to explain our reasoning. Of course. The concern that I have and that I'm asking you here is, was he manipulating the guidelines calculation in order to result in a sentence within guidelines, as opposed to then incurring the burden of imposing a sentence above guidelines and having to explain that and then risk greater appellate review? Sure. So two responses to that. First, I don't believe that would, there was no incentive for the court to do that because he knew it was going to be an appeal anyway, given the way the plea agreement worked, and he fully explained a sentence. It's not a situation where he's trying to move along quickly without an explanation. Second is that the court was trying to give, again, some credit. It's not that he's ultimately looking for a certain range. It's that the court is recognizing there is some merit to your fast-track position, just not kind of the full merit, considering everything, so two points rather than four points. And again, as the court noted, that was a waived argument, kind of either way. And then getting back to the court's other questions, is that the point, as the district court said, is that the defendant had been, had come back illegally several times. It's not so much how he was removed that mattered. It was that he came back several times. And the court even said this would be different if this was, you know, maybe the first time, or, for example, if he had previously had status and then tries to return and is told, no, that's since expired. That's not the case here at all. This defendant never had status in the United States. He comes back 12 times and then a 13th time leading to this conviction. So unless the court has any further questions, we would submit. Thank you. I'll be very brief. I do believe the point you raised in regards to Rosalba Gutierrez is addressed in my opening brief at pages AOB 25 to 27. And if the court doesn't have any other questions, I would submit. All right. Thank you. Thank you. Thank you. The matter is submitted for decision.
judges: Tashima, Nguyen, Simon